IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

SHOMAS T. WINSTON,

                           Plaintiff,

          v.                                          OPINION and ORDER

FREDERICK W. KRON, EILEEN MURPHY,                     20-cv-367-jdp
SHERRI A. PULDA, and KRIS DEYOUNG,

                    Defendants.

Pro se plaintiff and prisoner Shomas Winston injured his foot while playing basketball at the prison. He is suing three nurses and one doctor for acting negligently and violating the Eighth Amendment in the course of treating him. Three motions for summary judgment are before the court, one filed by Winston, Dkt. 79, one filed by Frederick Kron (the doctor), Dkt. 98, and one filed by Eileen Murphy, Sherri Pulda, and Kris DeYoung (the three nurses), Dkt. 105.

Winston has failed to adduce evidence that defendants Kron and Murphy acted recklessly or unreasonably, so they are entitled to summary judgment. But I conclude that there are genuine issues of material fact on Winston's claims against Pulda and one of his claims against DeYoung, so those claims will proceed to trial. Specifically, a reasonable jury could find that Pulda violated Winston's rights by instructing him to walk on his injured foot and by refusing to schedule a doctor's appointment after his condition failed to improve and that DeYoung violated his rights by disregarding a Kron's order to schedule physical therapy.

## UNDISPUTED FACTS

The following facts are undisputed except where noted.

At the time relevant to this case, Winston was housed at Fox Lake Correctional Institution. On December 21, 2019, Winston came to the health services unit after being injured while playing basketball. Defendant Eileen Murphy, a nurse, observed that Winston walked with a left-sided limp. Winston told Murphy that he "collided with someone in the air and when [he] came down [his] left knee was under [his] leg with it bending backwards and [he] heard something pop. The pain is shooting from my knee to the back of my foot." Dkt. 118-17, at 2. Murphy prescribed crutches, alternating does of acetaminophen and ibuprofen, muscle rub, and ice three times a day. She also educated Winston on "PRICE," which stands for protection, rest, ice, compression, and elevation. She scheduled a follow-up appointment with a nurse the following week.

On December 23, Tammy Studzinski, saw Winston for a follow-up appointment.[1] According to Studzinski's notes, Winston was still walking with a left-sided limp. He said that his knee was better, but his left foot still hurt. Studzinski instructed Winston to continue elevating his left leg and taking acetaminophen and ibuprofen for pain.

On December 26, Winston filed a health service request in which he complained that his left ankle was still bothering him. He asked for "an x-ray as soon as possible and [to] be seen." On December 28, he filed another health service request, stating that he was out of pain medicine.

---

[1] Studzinski was a defendant in this case, but Winston has settled his claims with her. *See* Dkt. 86 and Dkt. 87.

On December 30, Winston was seen by defendant Sherri Pulda, a nurse. She observed that Winston was limping. Winston told her that his ankle was "bothering [him] a lot to the point it effects [his] sleeping." Winston also says that he told her that his pain medicine wasn't working. According to Pulda's notes, Winston had stiffness and "minimal swelling" in his left ankle, but he still had full range of motion. Winston again asked for an x-ray or an MRI, but Pulda told him to "try conservative treatment first." Winston says that she told him she would schedule a doctor's appointment, but Pulda says she told him she would do that only if there was no improvement in his condition. Pulda gave Winston additional acetaminophen and ibuprofen. According to Winston, Pulda also instructed him to walk on his injured foot. Winston complied with this directive, causing him more pain.

On January 9, 2020, Winston submitted a health service request in which he wrote that he was "still in a lot of pain" and hadn't seen a doctor yet. In response, Nikki Shannon scheduled an appointment with a doctor.[2]

On January 21, Winston was seen by defendant Frederic Kron, a physician who worked as an independent contractor at the prison. Kron observed swelling, warmth, and tenderness around Winston's left ankle and pain with left ankle inversion. Kron ordered a cast boot, an x-ray, and acetaminophen and naproxen. He also asked for a follow-up appointment in one week. Winston says that Kron told him that he should use his crutches at all times when he is walking.

On January 30, Kron saw Winston again. Winston reported that he was feeling "much better." Kron observed that the swelling had nearly resolved, there was no tenderness, and

---

[2] Shannon was a defendant in this case, but Winston has settled his claims with her. Dkt. 131 and Dkt. 132.

Winston had full range of motion. The x-ray showed no fracture, dislocation, destructive bony process, or soft tissue abnormality. But Winston says that Kron told him that he "obviously" had a torn ligament, that he should've been treated sooner, and that Kron would order an MRI. Kron removed the cast boot, ordered physical therapy for range of motion and strengthening, and directed "[f]ollow up as needed." He did not order an MRI. After the January 30 appointment, Kron had no further involvement in Winston's health care.

On March 6, Winston filed a health service request. Among other things, Winston wrote that Kron told him that he was supposed to be scheduled for physical therapy. He also wrote that his ankle was still in pain and his pain medicine didn't work. In response, defendant Kris DeYoung wrote, "X rays of foot and ankle negative. No PT order."

On March 23, Winston was transferred to the Wisconsin Secure Program Facility. In August 2020, Winston began receiving physical therapy. In September 2020, an MRI showed that Winston has a nonosseous calcaneonavicular coalition, a congenital condition that leads to a flat foot and often manifests as a young adult.[3]

ANALYSIS

A.  Overview of the claims and legal standard

Winston is proceeding on claims based on the following alleged conduct:

(1)  Nurse Eileen Murphy refused to schedule a doctor's appointment for Winston.

(2)  Nurse Sherri Pulda refused to schedule a doctor's appointment for Winston and told him to walk on his injured foot.

---

[3] *See* David Lawrence, et al., "Tarsal Coalitions: Radiographic, CT, and MR Imaging Findings," *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4071469.

(3) Doctor Frederick Kron failed to ensure that staff was following his orders to perform an MRI and provide physical therapy.

(4) Nurse Kris DeYoung refused to comply with Kron's orders regarding the MRI and physical therapy.

All of Winston's claims arise under the Eighth Amendment or state negligence law. A prison official violates a prisoner's Eighth Amendment right to medical care if the official is "deliberately indifferent" to a "serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). A "serious medical need" is a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. *Johnson v. Snyder*, 444 F.3d 579, 584–85 (7th Cir. 2006). "Deliberate indifference" means that the defendant is aware of an excessive risk to the prisoner's health or safety, but the defendant is disregarding the risk by consciously failing to take reasonable measures to help the prisoner. *See Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997).

In the medical context, deliberate indifference may be inferred when the defendant's conduct is "blatantly inappropriate," *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996), or "so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006). In other words, "[a] constitutional violation exists only if no minimally competent professional would have so responded under those circumstances." *Johnson v. Dominguez*, 5 F.4th 818, 825 (7th Cir. 2021) (internal quotations omitted)).

Thus, a claim under the Eighth Amendment for failing to provide adequate medical care has three elements:

(1) Did the prisoner need medical treatment?

(2) Did the defendant know that the prisoner needed treatment?

(3) Despite his or her awareness of the need, did the defendant consciously fail to take reasonable measures to provide the necessary treatment? *See* Seventh Circuit Pattern Jury Instruction 7.15.

Wisconsin law defines medical negligence as the failure of a medical professional to "exercise that degree of care and skill which is exercised by the average practitioner in the class to which he belongs, acting in the same or similar circumstances." *Sawyer v. Midelfort*, 227 Wis.2d 124, 149, 595 N.W.2d 423, 435 (1999); *Schuster v. Altenberg*, 144 Wis. 2d 223, 229, 424 N.W.2d 159, 161–62 (1988). Like all claims for negligence, a claim for medical malpractice includes the following four elements: (1) a breach of (2) a duty owed (3) that results in (4) harm to the plaintiff. *Paul v. Skemp*, 2001 WI 42, ¶ 17, 242 Wis. 2d 507, 625 N.W.2d 860 (2001). Thus, to establish a prima facie medical negligence claim, a plaintiff must show that the defendants failed to use the required degree of skill exercised by an average medical professional in the defendant's field, that the plaintiff was harmed, and that there is a causal connection between the defendants' failure and the plaintiff's harm. Wis. JI–Civil 1023.

In response to a motion for summary judgment, it is the plaintiff's burden to show that a reasonable jury could find in his favor on the elements of his claims. *Henderson v. Sheahan*, 196 F.3d 839, 848 (7th Cir. 1999).

## B.  Winston's motion for summary judgment

Winston moves for summary judgment on all of his claims. It is unusual for a plaintiff to prevail on a summary judgment motion, especially in a case like this one that requires the plaintiff to prove that the defendants acted with a particular mental state. *See Shager v. Upjohn Co.*, 913 F.2d 398, 403 (7th Cir.1990) (it is "the rare case where it is the plaintiff's motion for summary judgment that was granted"). This court has explained why:

6

> When one of the issues is whether the defendant acted with [unlawful] intent, a plaintiff could not meet [the standard for obtaining summary judgment] unless the defendant admitted he had relied on an impermissible factor in making a decision. Once the defendant testifies that he did not have a[n] [unlawful] motive . . . it would be the rarest of instances in which the plaintiff could prevail at summary judgment. A court would have to conclude that the defendant was lying, but this is a determination almost always reserved for the factfinder.

*Day v. City of Baraboo*, 06–C–188–C, 2007 WL 5633174 (W.D. Wis. Jan. 31, 2007).

This case is no different. None of the defendants have admitted that they consciously refused to provide Winston with adequate care, and I cannot make that finding as a matter of law. I'm also not persuaded that Winston has shown that any of the defendants were negligent as a matter of law. So I will deny plaintiff's motion for summary judgment.

## C. Defendants' motions for summary judgment

Defendants don't question whether Winston had a serious medical need, so I need not consider that issue. Instead, defendants contend that no reasonable jury could find that any of them were deliberately indifferent to Winston's health or that their conduct fell below the standard of care. Alternatively, defendants contend that they are entitled to qualified immunity, which applies when the undisputed facts show that the defendants didn't violate clearly established law. *Campbell v. Kallas*, 936 F.3d 536, 545 (7th Cir. 2019).

### 1. Eileen Murphy

Murphy is the nurse who examined Winston shortly after he hurt himself playing basketball on December 21. She prescribed pain medicine, crutches, muscle rub, and ice three times a day.

Winston says that Murphy was negligent and violated the Eighth Amendment because she didn't schedule a doctor's appointment after examining him. But it's undisputed that

Murphy did schedule a follow-up appointment with a nurse, and Winston doesn't point to anything about his injury or Murphy's examination suggesting that Murphy knew or should have known that a doctor's appointment was needed at the time. Prisoners don't have the right to demand specific treatment. *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019). When Murphy examined Winston, all Murphy knew was that Winston hurt himself while playing basketball, that he had pain in his knee and foot, and that he was limping. He identifies no reason why it was unreasonable for Murphy to conclude that the treatment she provided was inadequate.

Winston says that later events show that he was more injured than Murphy believed, but the question isn't whether Murphy's assessment was incorrect; it's whether Murphy acted unreasonably based on the information that was available to her at the time. *See id.* at 965–66. Winston hasn't adduced evidence that Murphy acted unreasonably, so Murphy is entitled to summary judgment on both the Eighth Amendment and negligence claims.

### 2.  Sherri Pulda

Pulda was the nurse who examined Winston on December 30. I allowed Winston to proceed on two claims against her under both the Eighth Amendment and the common law of negligence: (1) she instructed Pulda to walk on his foot without the assistance of crutches; and (2) she refused to schedule an appointment with a doctor.

As for Winston's claim that Pulda instructed him to walk on his injured foot, Pulda doesn't contend that such advice would have been reasonable or based on medical judgment. *See Norfleet*, 439 F.3d at 396 (medical staff may violate Eighth Amendment if their decisions aren't based on medical judgment); *Glover v. Carr*, 949 F.3d 364, 368–69 (7th Cir. 2020) (same). Rather, her only response to that claim is that she "never instructed [Winston] to

8

engage in activity that would exacerbate his injury." Dkt. 106, at 14. But Winston says in his declaration that Pulda did instruct him to walk on the foot and that doing so caused him more pain. Dkt. 118, ¶ 11. So there is a genuine issue of material fact that precludes summary judgment on this claim.

It is a closer call on Winston's claim that Pulda that should have scheduled an appointment with a doctor. As already noted, Winston doesn't have the right to demand particular treatment. But when Pulda examined Winston, it had been 10 days since his injury, and his condition wasn't improving. Winston was still limping, and he says that he told her that the pain medicine was ineffective and his pain was bothering him so much that he couldn't sleep. Dkt. 118, ¶ 11. Pulda noted both stiffness and swelling. Dkt. 130, ¶ 15. Winston also says that Pulda told him that she would schedule an appointment with the doctor. *Id.*

Pulda doesn't explain why she chose not to schedule a doctor's appointment or any follow-up care. Instead, she says that Winston "did not present as an acute injury at that time." *Id.* But she doesn't explain what that means, and she doesn't explain why only "acute" injuries warrant a doctor's examination. Again, it had been 10 days since Winston's injury, and it didn't appear to be improving. Pulda also says that "[s]he opted for conservative treatment to promote healing and to limit over-using the injured area." *Id.*, ¶ 16. But Pulda doesn't identify any "conservative treatment" she prescribed other than acetaminophen and ibuprofen, which Winston said wasn't helping. And Pulda doesn't explain how whatever treatment she prescribed would "promote healing and . . . limit over-using the injured area." Again, Winston disputes that Pulda told him to limit use of his injured foot. Persisting in ineffective treatment without a medical basis may violate the Eighth Amendment, so summary judgment isn't appropriate. *Gonzalez v. Feinerman*, 663 F.3d 311, 314–15 (7th Cir. 2011); *see also Arnett v.*

*Webster*, 658 F.3d 742, 754 (7th Cir. 2011) ("[A] medical professional's actions may reflect deliberate indifference if he chooses an easier and less efficacious treatment without exercising professional judgment.").

Defendants contend that an expert is always required to establish the standard of care in medical negligence claims. But I have rejected that view. "[N]o expert is necessary when common knowledge provides a basis for finding negligence." *Jones v. Edge*, No. 16-cv-848-jdp, 2018 WL 2301846, at *4 (W.D. Wis. May 21, 2018). *See also Gil v. Reed*, 535 F.3d 551, 557–58 (7th Cir. 2008) (expert testimony is not needed to establish the standard of care under Wisconsin law when a plaintiff "show[s] that an ordinary person could conclude from common experience that he could not have been injured had his medical providers exercised care"). In this case, a reasonable jury could find based on common experience that instructing Winston to walk on his injured foot and failing to schedule a doctor's appointment fell below the standard of care, so I will deny Pulda's summary judgment motion on Winston's negligence claim.

Defendants also contend that they are entitled to qualified immunity on Winston's Eighth Amendment claim because their conduct didn't violate clearly established law. But in cases like this one involving a straightforward application of the test for deliberate indifference, the court of appeals has been reluctant to find that qualified immunity should apply. *E.g., Estate of Clark v. Walker*, 865 F.3d 544, 552–53 (7th Cir. 2017); *Estate of Miller, ex rel. Bertram v. Tobiasz*, 680 F.3d 984, 991 (7th Cir. 2012); *Roe v. Elyea*, 631 F.3d 843, 858 (7th Cir. 2011). This is because the merits and qualified immunity analyses may

> effectively collapse into one. . . . [A] plaintiff claiming an Eighth Amendment violation must show the defendant's actual knowledge of the threat to the plaintiff's health or safety, the defendant's failure to take reasonable measures, and the

> defendant's subjective intent to harm or deliberate indifference. If there are genuine issues of fact concerning those elements, a defendant may not avoid trial on the grounds of qualified immunity.

*Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002) (citations omitted). In this case, it is well established that medical professionals must base their decisions on medical judgment and may not persist with ineffective treatment. A reasonable jury could find that Pulda didn't comply with those requirements, so I will deny defendants' summary judgment motion on Winston's Eighth Amendment claims against Pulda.

### 3. Frederick Kron

Kron is a physician who examined Winston twice in late January 2020. I concluded in the screening order that Winston didn't state a claim under the Eighth Amendment against Kron, but I allowed Winston to proceed on a claim that Kron acted negligently by failing to ensure that staff was following his orders to perform an MRI and provide physical therapy.

As it turns out, Kron didn't order an MRI, so he couldn't be negligent for failing to implement that order. Winston didn't amend his complaint to include a claim that Kron violated his rights by failing to order an MRI, but even if he had, that claim would fail. "An MRI is simply a diagnostic tool, and the decision to forego diagnostic tests is a classic example of a matter for medical judgment." *Pyles v. Fahim*, 771 F.3d 403, 411 (7th Cir. 2014) (internal quotations omitted). At the time that Winston says that Kron should have ordered an MRI, Winston was on the mend. After only 10 days in a cast boot, Winston reported that he was feeling "much better," Kron observed that the swelling was "nearly all gone," Dkt. 118-9, there was no tenderness, and Winston had full range of motion. The x-ray showed no fracture or other abnormality.

11

Winston says that Kron should have ordered an MRI because there was still *some* swelling when Kron removed the boot. But Winston cites no evidence that the standard of care requires an MRI simply because all symptoms weren't eliminated. Based on the information that Kron had at the time, it was reasonable for him to conclude that an MRI wasn't needed. In any event, Winston doesn't explain how an MRI would have made a difference. He notes that he received an MRI of his foot in December 2020, but he doesn't say that the results of that MRI had any effect on his treatment or that the MRI could have improved his condition if it had been performed earlier. A negligence claim requires proof of harm, *Paul*, 2001 WI 42, at ¶ 17, so that is another basis for dismissing this claim.

As for Kron's failure to ensure that prison staff followed his order for physical therapy, Winston hasn't cited any evidence that it was Kron's responsibility to do that. Instead, Winston cites a prison policy stating that nurses and doctors should "work collaboratively." Dkt. 80, at 21. But that broad and general statement doesn't assign Kron the task of scheduling physical therapy sessions.

 It's undisputed that Kron had no further appointments with Winston, so he would have no reason to track Winston's progress with physical therapy. Although Winston alleges that Kron knew that his physical therapy appointments weren't being scheduled, Winston's evidence for that is an interrogatory response in which Kron cites medical records prepared by nurses in February 2020. Dkt. 125, ¶ 19 and Dkt. 118-7, at 6. But Kron doesn't say that he reviewed those records when they were prepared; rather, Kron denies that he received any information about Winston after his second January appointment. Dkt. 100, ¶ 10.

In sum, there is no basis for finding that Kron breached a duty to Winston. I will grant Kron's motion for summary judgment.

### 4. Kris DeYoung

DeYoung is a nurse who responded to a health service request that Winston filed on March 6, 2020.[4] I allowed Winston to proceed on a claim that DeYoung was negligent and violated the Eighth Amendment because she failed to comply Kron's orders for an MRI and physical therapy.

As already noted, Kron didn't order an MRI, so DeYoung can't be held liable for failing to comply with an order that didn't exist. I will grant summary judgment on that aspect of Winston's claim against DeYoung. But the claimed based on the physical therapy order is a different matter.

In the March 6 request, Winston complained that he was still waiting for physical therapy. In response, DeYoung wrote, "X rays of foot and ankle negative. No PT order."

DeYoung explains the basis for her response in two short paragraphs in her declaration:

> 13. Based upon my professional judgment and expertise as an RN, and to a reasonable degree of medical certainty, Winston was provided with appropriate medical care for foot/ankle injury.

> 14. All my actions were done in accordance with ACP orders, nursing protocols, and protocols of the Department of Corrections.

Dkt. 108. What's missing from DeYoung's declaration is any explanation for why she believed that there was no order for physical therapy. It's undisputed that Kron issued such an order on January 30, and defendants point to no evidence that Kron withdrew the order, or that it was otherwise cancelled. The absence of that information precludes summary judgment. It's well established that prison staff's refusal to comply with treatment ordered by a doctor can violate

---

[4] DeYoung also responded to health service requests that Winston filed in late January 2020, but Winston doesn't challenge the adequacy of those responses.

the Eighth Amendment. *See Perez v. Fenoglio*, 792 F.3d 768, 778 (7th Cir. 2015) (collecting cases). DeYoung doesn't say that she was unable to locate Kron's order or that she had other information leading her to reasonably believe that the order had been cancelled.[5] Rather, she seems to suggest that she made her own medical judgment that Winston didn't need physical therapy. But it's undisputed that DeYoung never examined Winston herself, so she would have no basis to disagree with Kron. In any event, defendants don't contend that Winston didn't have a serious medical need for physical therapy, so I need not consider that issue.

It may be that DeYoung was relying on responses to earlier health service requests from February 2020, in which other nurses (who are not defendants) told Winston that "PT cannot be done" because Winston was in segregation. Dkt. 110-2, at 30-31. Defendants discuss those responses in their proposed findings of fact, but DeYoung doesn't say that she relied on them. And defendants don't attempt to justify or even explain those earlier responses, which seem inconsistent with the prison's own policies. Dkt. 118-10 (DAI Policy 500.10.08, Paragraphs C and D) ("Security/custody or Restrictive Housing shall not be a barrier in access to health care."). So if defendants believe that Winston's placement in segregation justifies a refusal to comply with Kron's order, they will have to develop that issue at trial. I also reject DeYoung's arguments on qualified immunity for the same reason that I rejected Pulda's arguments.

**D. Conclusion**

I will grant summary judgment to defendants Murphy and Kron on all of Winston's claims against them. I will also grant summary judgment to DeYoung on Winston's claim that

---

[5] In their brief, defendants say that there was no "active order" for physical therapy when DeYoung responded to Winston's health service request, but they neither explain what they mean by that nor cite any supporting evidence. Dkt. 106, at 18.

she failed to implement Kron's order to schedule an MRI. But I will allow Winston to proceed to trial on the following claims under the Eighth Amendment and Wisconsin's common law of negligence: (1) defendant Pulda refused to schedule a doctor's appointment and instructed Winston to walk on his injured foot; and (2) defendant DeYoung failed to follow Kron's order to schedule physical therapy. I will issue a separate order in the coming days that provides guidance to Winston in preparing for trial

ORDER

IT IS ORDERED that:

1. Plaintiff Shomas Winston's motion for summary judgment, Dkt. 79, is DENIED.

2. Defendant Frederick Kron's motion for summary judgment, Dkt. 98, is GRANTED.

3. The motion for summary judgment filed by defendants Eileen Murphy, Sherri Pulda, and Kris DeYoung, Dkt. 105, is GRANTED in part and DENIED in part. The motion is denied on the following claims:

   a. Sherri Pulda refused to schedule a doctor's appointment and instructed Winston to walk on his injured foot, in violation of the Eighth Amendment and Wisconsin's common law of negligence.

   b. Kris DeYoung failed to follow Kron's order to schedule physical therapy, in violation of the Eighth Amendment and Wisconsin's common law of negligence.

   The motion is granted in all other respects.

4. Defendants Murphy and Kron are DISMISSED.

Entered December 27, 2021.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge

15